## ROSS *v.* GLOVER-BALL COMPANY *et al.*

1. The general rule is that an action on a contract must be brought in the name of the party in whom the legal·interest in such contract is vested.
2. By the written assignment of a bond for title by the obligee therein to a third person, such obligee no longer has such legal interest in the bond as will enable him to sue the obligor for its specific performance, either in his own behalf or that of the assignee; but the latter alone can sue for the specific performance of the contract of sale evidenced by the bond.
3. Where such obligee sells all his interest in the premises or in the bond for title to a third person, but does not assign the same in writing to his vendee, he can sue in behalf of such assignee for specific performance of the contract of sale embraced in the bond.
4. Where the obligees in a bond for title, when sued for the balance of the purchase-money of the premises embraced therein, sought in their answer to have the obligor specifically perform the contract of sale in behalf of another, and when they alleged in their answer that they had transferred and assigned the bond to another, who in turn had transferred and assigned the same to still another, but failed to allege that such assignment of the bond for title was in writing, the court did not err in overruling a demurrer to the answer, on the ground that the right to specific performance of the contract was shown to be in the assignee alone; but when on the trial the proof showed such assignment to be in writing, the court erred in rendering a final decree in favor of a sub-assignee requiring the obligor to specifically perform the contract of sale by conveying the premises to such assignee, or in default thereof that title be decreed in such subassignee.

No. 3585.　July 21, 1923.

Complaint. Before Judge Wright. Floyd superior court. December 16, 1922.

Cora R. Ross brought suit against the Glover-Ball Co., a partnership composed of· James A. Glover and Charlie Ball, on a promissory note for the principal sum of $2965, dated Nov. 8, 1918, payable to her order three years after date, with interest from date at· 6 per cent. per annum, payable annually, with a provision for the payment of 10 per cent. of the principal and interest due thereon as attorney's fees, and given by said partnership. She alleged that proper notice had been given of her intention to bring suit on said note to the April term, 1922, of Floyd superior court, in order to hold the makers for attorney's fees. Service of this petition was made upon the firm and upon James A. Glover, and with a return of non est inventus as to Ball. The partnership and James A. Glover filed their answer in which they admitted

the execution and delivery to the plaintiff of the note sued on, and service of the notices of intention to sue thereon. They alleged that on Nov. 8, 1918, the plaintiff sold to the Glover-Ball Co. certain described real estate known as Bale's wagon-yard, for the sum of $11,860, of which one fourth was paid in cash and one fourth was to be paid on or before one, two, and three years thereafter respectively, for which deferred payments three notes for $2965 each, bearing interest at the rate of 6 per cent. per annum, were delivered to the plaintiff. On Nov. 8, 1918, the plaintiff delivered to the Glover-Ball Co. a bond for title to convey said property upon payment of said deferred payments. They further alleged that the tract so conveyed, known as city lot No. 5 in block A, and conveyed as having a frontage of 100 feet on the northeast side of Fifth Avenue, had only a frontage of 98 feet, so that there was a deficiency of two feet extending back the full length of the lot, thereby decreasing the value of the property $200, which they pleaded as a set-off against the note sued on. On Feb. 14, 1920, the firm of Glover-Ball Co. was dissolved, and the bond for title was transferred to the Glover-Ball Co., a corporation. On Mar. 5, 1921, the charter of said corporation was so amended as to change its name to the Glover-McConnell Co.; and thereafter said corporation by deed conveyed all of said real estate to John A. Glover, thereby conveying all of its interest under the bond for title. The bond is not now in their control; they charge that it is lost or misplaced. It has never been transferred or assigned, except their interest, to John A. Glover. Defendants have stood ready to pay the amount legally due on said note, upon plaintiff executing and delivering to John A. Glover a deed to said property, which she has failed and refused to do. After the service of said notice of intention to sue, they, through their attorney at law, tendered to plaintiff's counsel the sum of $3365 in cash, as full settlement of all liability on said note, after deducting $200 on account of the deficiency in the land contracted to be sold and delivered under said bond for title. Said tender was made on March 21, 1922, prior to the return day of said court and before suit was filed thereon. They again offer said sum as a continuing tender. Plaintiff has persistently refused to execute a deed to this property until the bond for title was delivered to her, although defendants offer to waive any claim as to deficiency in the land

and accept a quitclaim deed from her. They requested said deed to be executed to John A. Glover, the holder of all their right, title, and interest in said property. It is necessary to get said matter adjusted. Defendants pray, that, upon payment of the amount legally due on said note, all the balance of the purchase-price having been paid, the plaintiff be required to execute to John A. Glover a warranty deed to said property, or in lieu thereof that the court decree the title to be in Glover; that the verdict and judgment in said case be in favor of the tender made to plaintiff's attorney, etc.

To this answer the plaintiff demurred on the ground that it set forth no matter of defense and no matter constituting a defense to said note or justifying the prayers of the answer. Plaintiff demurred specially to paragraphs of the answer setting up such deficiency in the land sold; and further demurred specially because no copy of the bond for title was attached to the answer and because it affirmatively appeared therefrom that the defendants had sold and conveyed the property. The court sustained the demurrer and struck the answer, " except as to the allegations and prayers thereof as to the decreeing of title into the defendants upon payment of such judgment as may be rendered." To that portion of said judgment refusing to sustain the demurrer as to the allegations and prayers as to the decreeing of title in the defendant upon the payment of such judgment as might be rendered, the plaintiff filed exceptions pendente lite, and assigned error thereon.

The case was submitted to the judge without the intervention of a jury. The following evidence was introduced: James A. Glover testified for the defendants, that he was a member of the firm of Glover-Ball Co., which purchased the property described in the answer from the plaintiff. Afterwards this partnership was incorporated under the name of the Glover-Ball Co. At the time they purchased this property the plaintiff gave them a bond for title, but the same is lost, and he was unable to find it after searching through his papers. That bond for title was never transferred to any one. This is the paper from Jim Glover and Charlie Ball, as partners composing the Glover-Ball Co., to the Glover-Ball Co., incorporated. Afterwards the Glover-McConnell Co. deeded its interest in that property to John A. Glover. The deed was made on October 10, 1921, after the authority for its execution was

recorded on the minutes. Witness was familiar with the bond for title. The paper purporting to be a copy of that bond, dated Nov. 8, 1918, is a correct copy to the best of his knowledge. Could not find the bond for title after searching through his own papers and those of both companies; the last time he saw it having been during a discussion about the two feet shortage on the upper side of the lot. Wright Willingham, of Willingham, Wright & Covington, lawyers, was there. Had the bond for title and was examining the property and measuring it off. Does not remember ever seeing it since. Going to Mr. Willingham's office was how he came to find the carbon copy of the original bond for title, after dissolution of the partnership of the Glover-Ball Co., and after execution of this conveyance to the Glover-Ball corporation. The bond for title had not been transferred at that time, and witness has never transferred it to anybody. Does not know whether Mr. Ball did so; nobody knows where Mr. Ball is; has not seen the bond since he left in June, 1920.

The defendants introduced the charter of the Glover-Ball Co., granted Feb. 14, 1920, the amendment to it granted March 5, 1921, changing the name of the corporation to Glover-McConnell Co., the deed from Jim Glover and Charlie Ball, as partners composing the firm of Glover-Ball Co., to the Glover-Ball Co., a corporation, dated Feb. 17, 1922, conveying the premises described in the answer of defendants, and being the property more fully described in a certain bond for title executed Nov. 8, 1918, by Cora R. Ross to said partnership, in which there is this language: "which bond for title is hereby transferred and assigned to said Glover-Ball Company, a corporation," said deed also conveying all the firm assets of the partnership to said corporation. The defendants also introduced a deed from the Glover-McConnell Co. to John A. Glover, dated Oct. 10, 1921, conveying the above property to said grantee. This deed contained this provision: "the above-described premises being known as Bale's wagon-yard and stores, and being the same property more fully described in a certain bond for title, executed on the 8th day of November, 1918, by Mrs. Cora R. Ross to Glover-Ball Company, a partnership composed of James A. Glover and Charlie Ball, and by said partnership and the members thereof transferred to Glover-Ball Company, a corporation, and by said Glover-Ball Company, a corpora-

tion, transferred to Glover-McConnell Company, a corporation, and by said Glover-McConnell Company, a corporation, transferred to J. A. Glover."

The court rendered a judgment finding for the plaintiff the full amount of principal, interest, and attorney's fees sued for. The court further found that the bond for title had been lost and could not be found and that it had never been transferred or assigned; and " ordered, adjudged, and decreed that upon the payment of the amount  .  .  found to be due to the plaintiff on the note sued on, that said plaintiff is required to execute and deliver to the  .  .  executors of last will of J. A. Glover good and sufficient deed conveying said property hereinbefore described, to him within ten days after said payment has been made; and upon failure to execute and deliver said deed, that title to said property be and is hereby vested in said  .  .  executors." The plaintiff moved for a new trial, upon the grounds that the judgment was contrary to the evidence, because: (1) The evidence did not show that the bond for title could not be enforced against the maker thereof, and wholly failed to account for said bond, and wholly failed to show that the interest of Charlie Ball in the bond had not been transferred to some third person. (2) No tender of performance or payment was shown by the defendant. (3) It was shown by the answer and evidence introduced by defendants that all title or interest they ever had in the property had passed out of them by assignments and conveyances prior to the filing of this suit; for which reason they were not entitled to maintain an equitable plea; and the judgment finding in favor of the third person is wholly without evidence to support it. (4) The finding of the court that the bond for title had been lost and never transferred or assigned is directly contrary to the evidence and pleadings and without evidence to support it. (5) There was no evidence of any claim of assignment of the bond for title from its original obligees to the executors of J. A. Glover. (6) The defendants had not offered to do equity and had not proved an unconditional tender of performance of the conditions of the bond for title on the part of the obligees or their assigns; but on the contrary the undisputed evidence disclosed that no such tender was made by either the defendants or their assigns. (7) The undisputed evidence shows that said bond has never been sur-

8

rendered, and fails to show that it is not in any event enforceable against the plaintiff; and it wholly fails to show that the defendants at any time offered, nor does the court require, that they indemnify the plaintiff for all loss by reason of the missing bond. (8) There were no pleadings justifying a decree vesting title to said property in said executors, they being wholly strangers to the record and not being parties thereto. (9) The judgment required plaintiff to deliver her deed to said executors, and in default thereof decreed the title to the real estate to be vested in them. The court overruled the motion for new trial, and error is assigned upon this ruling.

*Ralph D. Matteson* and *Denny & Wright,* for plaintiff.

*Maddox, Lipscomb & Matthews,* for defendants.

HINES, J. (After stating the foregoing facts.) Can the obligees in a bond for title, after they have sold and by their deed conveyed to a third person the premises which the obligor agrees to convey to them upon the payment of the purchase-money, and in which deed they assign said bond for title to such person, when sued for the last installment of the purchase-money, in their answer pray for, and have, a decree requiring the obligor to convey to the vendee and transferee of their immediate vendee of such premises and to their assignee of said bond said premises, upon their payment, or offer to pay, the purchase-money in full? In other words, can the obligees in said bond for title, when sued for the balance due on the purchase-price, seek, in their answer, specific performance of the contract of purchase, in behalf of one who claims under their immediate vendee of such premises and their assignee of said bond for title, especially when such subvendee or subassignee is not a party to the suit? We think not. The general rule is that an action on a contract must be brought in the name of the party in whom the legal interest in such contract is vested. Civil Code (1910), § 5516; *Cochran* v. *Strong,* 44 *Ga.* 636; *Dalton City Co.* v. *Johnson,* 57 *Ga.* 398; *Foster* v. *McGuire,* 96 *Ga.* 447 (23 S. E. 398). By their written assignment of this bond for title, the obligees therein had no longer any legal interest in the contract of purchase which would enable them to sue the obligor for its specific performance. Such right vested in the final assignee of the bond, who alone could sue the obligor for specific performance of her contract of sale. *Robinson* v.

*Perry,* 21 *Ga.* 183 (68 Am. D. 455) ; *Fulcher* v. *Daniel,* 80 *Ga.* 74 (4 S. E. 259) ; *Perry* v. *Paschal,* 103 *Ga.* 134 (29 S. E. 703) ; *Cowart* v. *Singletary,* 140 *Ga.* 435 (79 S. E. 196, 47 L. R. A. (N. S.) 621, Ann. Cas. 1915A, 1116) ; *Sullivan* v. *Curling,* 149 *Ga.* 96 (99 S. E. 533, 5 A. L. R. 124). After the obligees had assigned the bond for title to another, they could not seek specific perform-ance for the use and benefit of another claiming under their assignee. To maintain a suit for the use of another, there must be a legal right of action in the party bringing it. *Terrell* v. *Steven-son,* 97 *Ga.* 570 (25 S. E. 352) ; *Mitchell* v. *Georgia & Alabama Ry.,* 111 *Ga.* 760 (36 S. E. 971, 51 L. R. A. 622) ; *Norwich Union Fire Insurance Society* v. *Wellhouse,* 113 *Ga.* 970 (39 S. E. 397) ; *Wright* v. *Continental Ins. Co.,* 117 *Ga.* 499 (43 S. E. 700) ; *State* v. *Bank of Quitman,* 117 *Ga.* 849 (45 S. E. 236). An action for specific performance of a contract of sale of land will lie at the instance of the obligee in a bond for title, suing in behalf of a third person to whom he has sold all his interest in the premises or in the contract, such assignee being a coparty plaintiff as usee, where no assignment in writing of such bond has been made. *Simms* v. *Lide,* 94 *Ga.* 553 (21 S. E. 220). The answer of the defendants did not allege that the transfer and assignment of this bond for title by them to their assignee was in writing, which allegation was essential to enable such assignee, or one claiming as a subassignee, to bring a suit in his name for its specific performance. *Hartford Fire Ins. Co.* v. *Amos,* 98 *Ga.* 533 (25 S. E. 575) ; *Foster* v. *Sutlive,* 110 *Ga.* 297 (34 S. E. 1037). For lack of this specific allegation the court did not err in sustaining the demurrer of the plaintiff to the portions of the answer of the defendants which sought specific performance of this contract.

But on the trial proof of the assignment of the bond for title in writing was made, and such proof negatived the right of the de-fendants to specific performance of this contract either for them-selves or for the use of the subassignee. For this reason the court erred in rendering a decree for its specific performance in behalf of such assignee. This renders it unnecessary to determine the question whether the evidence was sufficient to authorize a decree for specific performance. We affirm so much of the judgment of the court as finds for the plaintiff upon the note sued upon; but we reverse the final decree requiring the plaintiff to convey

these premises to the executors of J. A. Glover, and in default thereof that title be decreed in them.

*Judgment affirmed in part and reversed in part. All the Justices concur.*